## Rate of Public Inspection of Rate Filings by Insurers Under the Fire Rate and Casualty Rate Acts

PACKEL, Attorney General, March 29, 1974.—You have requested our opinion regarding the right of public inspection of rate filings by insurers under both The Fire, Marine and Inland Marine Rate Regulatory Act of June 11, 1947, P. L. 551, as re-enacted and amended by the Act of August 23, 1961, P. L. 1053, 40 PS §§1221-1238 ("Fire Rate Act") and The Casualty and Surety Rate Regulatory Act of June 11, 1947, P. L. 538, 40 PS §§1181-1199 ("Casualty Rate Act").

Both of these acts have as a purpose the regulation of insurance rates "to the end that they shall not be excessive, inadequate or unfairly discriminatory." To enforce this goal, both of these acts call for an insurer to file all rates with the Insurance Commissioner with accompanying justification.

Specifically, the Fire Rate Act provides which rates must be filed: 40 PS §1224(a). Each filing must be on file for a waiting period of 30 days before it becomes effective, with certain exceptions: 40 PS §1224(d). If the commissioner does not approve the filing, he must hold a hearing with written notice specifying the matters which he finds may not comply with the law: 40

PS §1225(a). Thereafter, he makes such order as he may deem appropriate in accordance with the Administrative Agency Law: 40 PS §1236(b). Any insurer, rating organization "or person aggrieved" by any adjudication, including a disapproval of a filing or portion thereof, has a right of appeal in accordance with the Administrative Agency Law: 40 PS §1236(c).[1]

Both acts provide in section 4(a), 40 PS §1224(a), 40 PS §1184(a):

"A filing and any supporting information shall be open to public inspection after the filing becomes effective."

Your question, in view of the regulatory scheme, is whether the Insurance Commissioner, in his discretion, may make public a rate filing and supporting information between the time it is received by the Insurance Department and the time it becomes effective. The reason for this question is that if a hearing is to be held to consider the merits of a rate filing, members of the public who wish to participate would not have a reasonable basis upon which to do so if they did not have an opportunity to review the filing and its supporting information.

I

The first problem to which we must address ourselves is whether members of the public have the right to appear in such a hearing. If they do not, then it would not matter whether or not they have access to the filing or supporting information. It is our opinion that certain members of the public do have the right to participate in such hearings. We reach this opinion through a careful reading of section 16(c) of the Fire Rate Act, 40 PS §1236(c) and section 17(c) of the Cas-

---

[1] Similar provisions are found in the Casualty Rate Act: 40 PS §1184(a), (d), §1185(a), §1197(b), (c).

ualty Rate Act, 40 PS §1197(c), which both provide that "[a]ny insurer, rating organization or person aggrieved by any adjudication, including a disapproval of a filing or portion thereof under the provisions of section five hereof, shall have a right to appeal therefrom to the Commonwealth Court and have a judicial review of such adjudication within the time and in the manner and with the same effect as is provided by the Administrative Agency Law."

If only the insurer or rating organization to which it belongs were to have the right to participate in such a hearing, then there would be no need for the reference to "persons aggrieved by any adjudication." In our opinion, the reference to such persons is intended as a reference to members of the public who have an interest in the rate filing within the meaning of section 2(c) of the Administrative Agency Law of June 4, 1945, P. L. 1388, 71 PS §1710.2(c). Accordingly, such persons have a right to participate in the rate hearing.[2]

## II

The next question we must answer is who is an aggrieved person within the meaning of the acts in question? This is not a question which we can or need answer at this time because there are too many factual differentials which may come into play. In our opinion, the Insurance Commissioner has the discretion to determine on a case by case basis who has a legitimate

---

[2] We note that the hearing in question is not the type of hearing discussed by the court in City of Pittsburgh v. Insurance Department of Pennsylvania, 448 Pa. 466 (1972), reversing Comm. Ct. 262 (1971), where intervention by other parties was refused and such refusal was upheld. In that case, under the Non-Profit Hospital Plan Act, it was purely an informational hearing which the Insurance Commissioner was conducting, not a rate hearing as required under the above laws.

right to participate in a hearing and thus to examine a particular filing.

Whatever the ultimate scope of the commissioner's discretion, in our opinion, any insured party whose rates would increase under the filing is such a person who would have standing to participate. Such a person is clearly an aggrieved person; moreover such an insured would have the right to intervene under the Rules of Procedure[3] to which you are subject and under which you conduct your hearings.

### III

Given the right of an insured to participate in a rate hearing, we may then turn to the proper interpretation of the quoted provision of section 4(a) of the acts in question. Are these provisions to be interpreted as making the filing and supporting information open to public inspection only after the filing becomes effective? Or are they to be interpreted to *require* the filings to be public information on their effective dates, but public within the discretion of the Insurance Commissioner prior to that time? The most sensible construction, as you have suggested, is that between the time the filing is received and the time it becomes effective, the Insurance Commissioner, in his discretion, may make the filing and supporting information available for public inspection to those who would have standing to participate.

We are confirmed in this conclusion by similar provisions in the banking laws. Section 302 of the Department of Banking Code of May 15, 1933, P. L. 565, as amended, 71 PS §733-302, provides that all information filed with the Department of Banking is confiden-

---

[3] 10 Pa. Code §31.3, §35.27-.32.

tial except as otherwise provided. The Supreme Court in Conestoga National Bank of Lancaster v. Patterson, 442 Pa. 289, 299 (1971), held that the divulgement of information filed by a bank seeking to open a branch bank was public information to any bank which wished to contest the branch based on other laws of the Commonwealth, "namely the constitutional right of appeal, as well as pursuant to general requirements of procedural due process." See also First National Bank of Milford v. Department of Banking, 4 Comm. Ct. 168 (1972); First National Bank of Pike County v. Department of Banking, 7 Comm. Ct. 603 (1973).

Based on the reasoning in the Conestoga case, where the Supreme Court held that a broad confidentiality statute is superseded by the due process rights of a protestant, we have no hesitation in concluding in this case that an interested party may have access to the filing and supporting information submitted by an insurer wishing to increase rates.

## IV

You have finally requested our advice as to your discretion should an insurer wish to keep confidential a portion of the information in order to protect legitimate business secrets or to preserve trade secrets or information valuable to competitors. In this regard, we believe you do have such discretion. We refer you specifically to the regulations adopted by the Department of Banking to implement the decisions above referred to: 10 Pennsylvania Code, §3.1-3.3. Section 3.3 specifically indicates what portion of a filing shall be deemed confidential and the requirements which must be met for a person to examine that file. We recommend the adoption of similar regulations to implement this opinion.